UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WAYNE CHRISTOPHER and
LARRY CHRISTOPHER,

Plaintiffs,

v.

DAN GLICKMAN,
Secretary of Agriculture,

Defendant.

CIVIL NO. 00-2550 (RHK/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on January 30, 2002 upon Defendant's Motion for Summary Judgment [Docket No. 17] and Plaintiffs' Motion for Summary Judgment [Docket No. 19]. Matthew L. Benda, Esq. appeared on behalf of Plaintiffs; Patricia R. Cangemi, Esq. appeared on behalf of Defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

## FINDINGS OF FACT/REPORT

Plaintiff Wayne Christopher has a small hog operation. He and his brother, Plaintiff Larry Christopher, also have a small hog operation. Wayne and Larry went to the local office of the Farm Service Agency to apply for benefits under the Small Hog Operations Payment Program II Program ("SHOP II"). At that office, an Application Form was completed. The form, as completed, and as signed by Wayne Christopher, may be found at page 00000010 of the Record.[1] The form contained the following entries, among

---

[1] In future references to the record, we delete the zeroes which precede the meaningful number. Some of the Exhibits, such as those on page 10 and page 53, appear in more than one place in the Record.

FILED MAR 01 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

others. (We have underscored the portion of the form which are printed; the portions which are not underscored appear in handwriting on the Exhibit.)

> "5. Name of Hog Operation (*prepare 1 application per Hog Operation*): Wayne Christopher
>
> "12. Number of Head: 2488
>
> "14. Producer's Signature: Wayne Christopher; Producer's ID Number: 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; Share: 100%."

The signature of Wayne Christopher on this form constituted a certification that the information was true and correct. This application was approved on September 10, 1999. Record, page 53. A spot check by authorities later led to the belief that in fact 2,500 head of hogs were sold by Wayne Christopher. Wayne Christopher was notified that this number is one over the permissible limit, and that therefor the SHOP II payment of $5,000 would be denied.

Wayne Christopher then wrote to advise that of the total of 2,500 hogs, 15 were those of his brother Larry Christopher, and 2,485 were his, thus bringing his number of hogs under the 2,500 limit. Upon further investigation, however, Defendant determined that in fact all of the hogs were sold as part of a joint Hog Operation involving both Larry and Wayne. Since paragraph 5 of the Application stated that the Hog Operation was only that of Wayne, and paragraph 14 of the Application stated that Wayne had a 100% share of that single Hog Operation, this constituted a misrepresentation. Benefits were denied upon this basis, under the provisions of 7 C.F.R. § 759.8.[2]

---

[2] 7 C.F.R. § 759.8 provides: "(a) A hog operation shall be ineligible to receive assistance under this program if it is determined by the State committee or the county committee to have : (1) Adopted any scheme or device which tends to defeat the purpose of this program; (2) Made any fraudulent representation; or (3) Misrepresented any fact affecting a program determination."

After the appeal process, the issue eventually reached the Director of the Farm Service Agency. Her opinion is at R. 194 - 197. The (Acting) Director determined:

> "By signing the application, the Appellant certified that all information on the form was correct. The Appellant represented himself as the sole producer with 100 percent share in the operation. Absent any misaction or misinformation by the Agency, the Hearing Officer's conclusion that the Appellant acted in good faith when applying for benefits is not a proper basis for relief. Substantial evidence does not support the Hearing Officer's determination that the Agency erred in denying relief."

R. 196.

The matter is now before this Court upon the Complaint of Plaintiffs. They rely upon the provisions of 7 C.F.R. § 718.8, which permits a person to avoid the consequence of "incomplete performance" where the error is the result of reliance upon incorrect information given by an FSA representative.[3] This relief is not available if "the

---

[3] 7 C.F.R. § 718.8 reads as follows:

> "§ 718.8 Incomplete performance based upon action or advice of an authorized representative of the Secretary.
>
> (a) Notwithstanding any other provision of the law, performance rendered in good faith based upon action of, or information provided by, any authorized representative of a County or State Farm Service Agency committee, may be accepted by the Administrator, FSA (Executive Vice President, CCC), the Associate Administrator, FSA (Vice President, CCC) or the Deputy Administrator for Farm Programs, FSA (Vice President, CCC), as meeting the requirements of the applicable program, and benefits may be extended or payments may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.
>
> (b) The provisions of this section shall be applicable only if a producer relied upon the action of a county or State committee or an authorized representative of such committee or took action based on information provided by such representative. The authority provided in this part does not extend to cases where the producer knew or had sufficient reason to know

producer knew or had sufficient reason to know that the action or advice . . . upon which they relied was improper or erroneous." Section 718.8(b).

We review the decision of the Director under the provisions of the Administrative Procedure Act, 5 U.S.C. § 706, and particularly as to whether it was arbitrary or capricious (Subd. (2)(A)), or unsupported by substantial evidence. (Subd. (2)(E)).

Plaintiffs acknowledge that the 2500 hogs were sold as a part of a Joint Hog Operation, but they contend that when they told this to the FSA representative, they were told to fill out the Application Form to show the Hog Operation to be only that of Wayne. To substantiate this argument, they point to the fact that in part 14 of the Application Form (R. 10), the figure "75%" had been inserted following Wayne's name, and then was crossed out; and that beneath the "75%" entry, another entry of "25%" had been entered, and then crossed out.[4] They argue that this serves to substantiate that the FSA agent had been told of the Joint Hog Operation, and that they in good faith relied upon the "misaction of and misinformation provided by the Agency representative" when Wayne signed the form and represented that it was an individual Hog Operation.

We start with the observation that the Director was entitled to rely upon the fact that Wayne Christopher's signature on the Application Form was a formal "Certification" and that by signing the Certification, Wayne Christopher was warranting that the facts stated in the application were true. The certification reads as follows:

---

that the action or advice of the committee or its authorized representative upon which they relied was improper or erroneous, or where the producer acted in reliance on their own misunderstanding or misinterpretation of program provisions, notices, or advice."

[4] The evidence does not reflect the basis upon which it was claimed that Wayne's interest in their joint Hog Operation was 75%, and Larry's was 25%.

> "I certify that all the information entered on this application is true and correct and all persons involved in this operation have submitted the number of feeder pigs and slaughter hogs marketed during the last six months of 1998. I also understanding that I could not market 2,500 or more head of feeder pigs and slaughter hogs from this hog operation during the last six months of 1998. To ensure that all program eligibility requirements are met for this hog operation, I understand that my hog operation may be selected for spot check. If my hog operation is selected for spot check, I may be required to provide the name of all buyers to whom the hogs were marketed during the last six months of 1998 and any other information that may be required to determine program eligibility. Providing a false certification to the government is punishable by imprisonment, fines and other penalties. All information provided herein is subject to verification by the Farm Service Agency. The provision of criminal and civil fraud statutes that apply to this certification, includes 18 USC 286, 297, 371, 641, 651, 1001 and 1014; USC 714m; and 31 USC 3729."

We conclude that an applicant is always required to provide true information on an Application Form which he certifies, notwithstanding the provisions of 7 C.F.R. § 718.8. Either the information on the Application Form is true or it is not. If it is not true, the applicant may not certify that it is true, regardless of what he is told by a representative of the FSA. While the parties have not cited authority as it relates to this particular point, we conclude that this alone warrants an affirmance of the decision of the Director, and the grant of summary judgment to Defendant. In the words of 7 C.F.R. § 718.8, a producer knows, or has sufficient reason to know that any advice of a committee or authorized representative to certify false statements in an Application Form is improper and erroneous. See also Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206 (D.C. Cir. 1998), and Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S. Ct. 2465 (1990) relied upon by Defendant for the proposition that "claims of equitable estoppel against the government must be rejected."

The Director was also entitled to consider other factors. Plaintiffs have offered an explanation of the entries in part 14 of the Application Form. But an explanation is also needed as to parts 5 and 12 of the Application Form. Paragraph 5 of the form reflects that the Hog Operation is solely that of Wayne Christopher, and no basis appears on which it would be expected to change this entry to "Wayne and Larry Christopher." Another important factor is that parts 12 and 14 of the Form must be considered together. If it were truly intended that this Application was for a Joint Hog Operation of Wayne and Larry Christopher, then the number of hogs listed in part 12 would have been 2,500, not 2,488 as specified on the Application Form which Wayne Christopher certified was true. The listing of only 2,488 hogs in response to part 14 of the Application Form constituted substantial evidence that the Application was made solely on behalf of the Hog Operation of Wayne Christopher.

Our review of this matter is limited. The Director reasonably concluded that the Application Form was not filled out in error, nor did it contain the information certified by Wayne Christopher by reason of conduct attributable to an FSA employee. We conclude that the decision of the Director was not arbitrary or capricious, that it was supported by substantial evidence in the record, and that there are not other bases upon which it should be reversed.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment [Docket No. 17] be granted, and that Plaintiffs' Motion for Summary Judgment [Docket No. 19] be denied, and that the Complaint be dismissed with prejudice.

Dated: March 1, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before March 18, 2002 written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before March 18, 2002.